UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY<br>OF HARTFORD and CONTINENTAL<br>CASUALTY COMPANY,<br>333 S. Wabash<br>Chicago, IL 60604<br><br>Plaintiffs,<br><br>v.<br><br>WELDWIRE COMPANY, INC,<br>103 Queens Drive<br>King of Prussia, PA 19406<br><br>Defendant. | No.: |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs National Fire Insurance Company of Hartford ("National") and Continental Casualty Company ("Continental"), by their counsel, bring this complaint for declaratory judgment in their favor and against defendant Weldwire Company, Inc. ("Weldwire"), as more fully described below:

### INTRODUCTION

1. This is a coverage dispute arising under primary and excess general liability policies that plaintiffs issued to Weldwire. Weldwire, an importer and distributor of welding rods and wires, has tendered a demand for coverage under these policies for liability arising from its sale of allegedly defective products, including liability for repair and remediation of damages allegedly caused by those defects. The insurers, National and Continental, seek a declaration of non-coverage because, among other things, damages arising from the repair and replacement of

defective products and/or faulty workmanship do not constitute an "occurrence" or "incident" as those terms are defined under the policies and as they are construed under Pennsylvania law. Furthermore, there is no coverage under various policy exclusions including, but not limited to, the "contractual liability" exclusion, the "recall of products, work or impaired property" exclusion, and the "damage to your product"/"damage to your work" exclusions.

## THE PARTIES

2. National, the primary insurer, is a corporation organized and existing under the laws of Connecticut with its principal place of business in Illinois. National is licensed to do business in Pennsylvania and is authorized to execute and deliver insurance policies in Pennsylvania.

3. Continental, the excess insurer, is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Illinois. Continental is licensed to do business as an insurance company in Pennsylvania, and is authorized to execute and deliver contracts of liability insurance in Pennsylvania.

4. Upon information and belief, Weldwire, the insured, is a Pennsylvania corporation with its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the dispute is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391, because the defendant resides in this judicial district and a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

### A. The Insurance Policies

7. National and Continental seek a declaration from this Court concerning their respective obligations to Weldwire under policies they issued for the policy term of February 24, 2009 to February 24, 2010.

8. The National primary general liability insurance policy, No. P 20944331611 ("the National Policy"), has an occurrence limit of $1,000,000 and a general aggregate limit of $2,000,000. A copy of relevant portions of the National Policy is attached hereto as Exhibit A.

9. The Continental excess general liability policy, No. P 2094431644 ("the Continental Policy"), is excess to all scheduled underlying insurance and has a $5,000,000 limit for each incident and a general aggregate limit of $5,000,000. A copy of the Continental Policy is attached hereto as Exhibit B.

### B. Purchase and Distribution of Allegedly Defective Products

10. Weldwire's alleged liability in the underlying matter arises out of its distribution of allegedly mislabeled welding rods,[1] which it purchased from Gedik Welding, Inc. ("Gedik"), a manufacturer located in Istanbul, Turkey. The alleged mislabeling was done by Gedik at its manufacturing facility before the welding rods were shipped to Weldwire.

11. In April 2009, Weldwire sold some of the allegedly mislabeled rods to Sowesco, Inc. ("Sowesco") and other unidentified customers. Sowesco then repackaged and sold the rods to another distributor, Red Ball Oxygen ("Red Ball"), which in turn sold the product to various

---

[1] The product at issue is packaged in a continuous spool of wire, which, when used for its intended purposes, feeds automatically into a welder. The welding wire is melted between two pieces of pipe and bonds the two.

"end users," including Shell Chemicals Norco ("Shell-Norco") and The Industrial Corporation ("TIC").

12. Both Shell-Norco and TIC allegedly used these welding rods in construction projects that were then underway.

13. On July 27, 2009, Shell-Norco allegedly notified Sowesco that the rods did not meet promised specifications. See September 15, 2009 Sowesco Memorandum attached hereto as Exhibit C.

14. Upon testing, Sowesco concluded that the rods indeed contained a weaker metallurgical composition than that represented on the rods' labels. See id. Specifically, according to Sowesco, the rods were stamped "ER80-B2," although they were determined to be "ER80S." Id. Recognizing the potential problem, Sowesco allegedly immediately alerted its supplier, Weldwire, and its customers. See Exhibit C.

15. Thereafter, upon information and belief, Shell-Norco and TIC removed and/or replaced the allegedly nonconforming rods that had already been used at ongoing construction projects. See, e.g., "Inspection Report" attached hereto as Exhibit D.

16. Sowesco has allegedly voluntarily reimbursed Shell-Norco for approximately $12,000 in costs associated with repairing and replacing the defective welding rods.

17. In August 2009, TIC provided an estimate of repair costs to Sowesco, which referenced alleged remedial costs exceeding $592,466.

C. **Claim against Weldwire**

18. In a November 2, 2009 letter to Gedik, Weldwire, Sowesco, and Red Ball, TIC demanded "immediate payment in the amount of $442,506.36 for rework costs" allegedly caused by the defective welding rods. See November 2, 2009 letter, attached hereto as Exhibit E.

4

19. On February 9, 2010, National and Continental were advised that Sowesco intended to file suit against Weldwire for any liability that Sowesco has allegedly incurred, or will incur, from distributing the mislabeled welding rods. See February 9, 2010 letter, attached hereto as Exhibit F.

**D.     The Coverage Dispute**

20. On August 20, 2009, after Sowesco alerted Weldwire to a potential problem with the welding rods, Weldwire tendered a claim for coverage under the National Policy. See September 17, 2009 National letter, attached hereto as Exhibit G. Weldwire reported that the welding rods allegedly contained a different alloy than what had been stamped on them by the manufacturer. See id.

21. In the letter dated September 17, 2009, National advised Weldwire that it would investigate the "potential claims" subject to a full and complete reservation of rights under the policies. Id.

22. On January 11, 2010, after further investigation, National disclaimed any obligation to defend or indemnify because there was no "property damage" and because, in any event, the potential claimant's "property damage" allegations were not the result of an "occurrence" as those terms are defined under the policies. See January 11, 2010 National letter, attached hereto as Exhibit H. The January 11, 2010 letter also stated that coverage was barred under various exclusions, i.e., the "Contractual Liability," "Recall of Products, Work or Impaired Property," and "Damage to Your Product" exclusions. Finally, the letter reserved rights to deny coverage under other provisions.

23. In a letter to National dated February 9, 2010, counsel for Weldwire demanded copies of any investigative documents or reports that National reviewed in evaluating

Weldwire's claim for coverage, and suggested that National's denial was in bad faith. See Exhibit F.

## APPLICABLE POLICY PROVISIONS

24. Both the National Policy and the Continental Policy require an "occurrence" to trigger coverage. Both policies define "occurrence" as an "accident."

### A. The National Policy

25. Specifically, the National Policy provides in relevant part as follows:

> 1. **Insuring Agreement**
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….
>
> \* \* \*
>
>> b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>>
>>> (2) The "bodily injury" or "property damage" occurs during the policy period; and…

Exhibit A, Policy § I, ¶ 1(a).

26. "Occurrence" is defined in the National Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Exhibit A, Policy § V, ¶ 13.

### B. The Continental Policy

27. Similarly, the Continental Policy provides in relevant part as follows:

6

1. **Insuring Agreement**

   We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

   a. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;

      (2) The "bodily injury" or "property damage" occurs during the policy period; and...

Exhibit B, Policy § I, ¶ 1.

28.   "Incident" is defined in the Continental Policy in relevant part as follows: "With respect to 'bodily injury' and 'property damage,' 'incident' means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Exhibit B, Policy § V, ¶ 9(a).

C.   **Policy Exclusions**

29.   The National and Continental policies contain many identical exclusions. Those exclusions include the following:

   2. **Exclusions**

      This insurance does not apply to:

      * * *

      b. **Contractual Liability**[2]

---

[2] The Continental Policy's Contractual Liability Exclusion contains slightly different language. See Exhibit B, Policy § I, ¶ 2(b).

7

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

8

>This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exhibit A, Policy § I, ¶ 2(m).

* * *

>n. **Recall Of Products, Work Or Impaired Property**
>
>Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
>(1) "Your product";
>
>(2) "Your work"; or
>
>(3) "Impaired Property";
>
>if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exhibit A, Policy § I, ¶ 2. <u>See</u> also Exhibit B, Policy § I, ¶ 2.

30. "Your product" is defined as follows:[3]

>"Your product":
>
>a. Means:
>
>>(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>>
>>>(a) You;
>>>
>>>(b) Others trading under your name; or

---

[3] The Continental Policy's definition of "Your Product" contains slightly different language. <u>See</u> Exhibit B, Policy § V, ¶ 14.

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

Exhibit A, Policy § V, ¶ 21.

## COUNT I
### (Declaratory Judgment)

31. National and Continental incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

32. By reason of the aforesaid, National and Continental are entitled to a judicial declaration that the policies do not cover Weldwire's claims for defense and/or indemnity.

33. An actual controversy exists between plaintiffs and Weldwire, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, plaintiffs National and Continental request that judgment be entered in their favor and against the defendant Weldwire, and ask this Court to:

  A. Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the insurance policies;

  B. Determine, decide, adjudicate and declare that there is no duty to defend or indemnify Weldwire under the policies based on the grounds set forth in Counts II through VI, and any other ground pursuant to the plaintiffs' reservation of rights.

C. Award plaintiffs all costs and expenses incurred in this matter, and grant any such other and further relief which this Court deems just and proper.

## COUNT II
### (Declaratory Judgment – No "Occurrence")

34. National and Continental incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

35. By reason of the aforesaid, National and Continental are entitled to a judicial declaration that allegations against Weldwire arising from its distribution of defective products do not constitute an "occurrence" or "incident" as those terms are defined under the policies and as they are construed under Pennsylvania law.

36. The mislabeling of the welding rods by Gedik, the manufacturer, was not an "accident," let alone an "accident" committed by Weldwire.

37. An actual controversy exists between plaintiffs and Weldwire, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, plaintiffs National and Continental request that judgment be entered in their favor and against the defendant Weldwire, and ask this Court to:

A. Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the insurance policies;

B. Determine, decide, adjudicate and declare that there is no duty to defend or indemnify Weldwire because there was no "occurrence" or "incident" under the policies.

C. Award plaintiffs all costs and expenses incurred in this matter, and grant any such other and further relief which this Court deems just and proper.

## COUNT III
### (Declaratory Judgment – Contract Exclusion Bars Coverage)

38. National and Continental incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

39. By reason of the aforesaid, National and Continental are entitled to a judicial declaration that Weldwire's claim for coverage is excluded under the policies because any obligation by Weldwire to pay damages for property damage caused by the mislabeled welding rods is by reason of the assumption of liability in a contract agreement between Weldwire and a third-party.

40. An actual controversy exists between plaintiffs and Weldwire, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, plaintiffs National and Continental, request that judgment be entered in their favor and against the defendant Weldwire, and ask this Court to:

A. Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the insurance policies;

B. Determine, decide, adjudicate and declare that there is no duty to defend or indemnify Weldwire because of the policies' contractual liability exclusions.

C. Award plaintiffs all costs and expenses incurred in this matter, and grant any such other and further relief which this Court deems just and proper.

## COUNT IV
### (Declaratory Judgment – "Your Product" Exclusion Bars Coverage)

41. National and Continental incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

42. By reason of the aforesaid, National and Continental are entitled to a judicial declaration that the damage to "Your Product" exclusion precludes coverage.

43. An actual controversy exists between plaintiffs and Weldwire, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, plaintiffs National and Continental request that judgment be entered in their favor and against the defendant Weldwire, and ask this Court to:

A. Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the insurance policies;

B. Determine, decide, adjudicate and declare that there is no duty to defend or indemnify Weldwire because of the policies' "Your Product" exclusions.

C. Award plaintiffs all costs and expenses incurred in this matter, and grant any such other and further relief which this Court deems just and proper.

## COUNT V
### (Declaratory Judgment – Damage To Impaired Property or Property Not Physically Injured Exclusion Bars Coverage)

44. National and Continental incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

45. By reason of the aforesaid, National and Continental are entitled to a judicial declaration that allegations against Weldwire arising from its distribution of defective products involve property damage to impaired property or property that has not been physically injured.

46. An actual controversy exists between plaintiffs and Weldwire, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, plaintiffs National and Continental request that judgment be entered in their favor and against the defendant Weldwire, and ask this Court to:

A. Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the insurance policies;

B. Determine, decide, adjudicate and declare that there is no duty to defend or indemnify Weldwire because of the policies' Damage To Impaired Property or Property Not Physically Injured Exclusions.

C. Award plaintiffs all costs and expenses incurred in this matter, and grant any such other and further relief which this Court deems just and proper.

## COUNT VI
### (Declaratory Judgment – Recall of Products, Work or Impaired Property Exclusion Bars Coverage)

47. National and Continental incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

48. By reason of the aforesaid, National and Continental are entitled to a judicial declaration that allegations against Weldwire arising from its distribution of defective products involve "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal" of Weldwire's work, product, or "impaired property" that contain known or suspected defects, deficiencies, inadequacies, or dangerous conditions.

49. An actual controversy exists between plaintiffs and Weldwire, and this Court has the power to declare the rights and obligations of the parties pursuant to 28 U.S.C. §2201.

WHEREFORE, plaintiffs National and Continental request that judgment be entered in their favor and against the defendant Weldwire, and ask this Court to:

A. Determine, decide, adjudicate and declare the rights and liabilities of the parties hereto with respect to the insurance policies;

B. Determine, decide, adjudicate and declare that there is no duty to defend or indemnify Weldwire because of the policies' Recall of Products or Impaired Property Exclusions.

C. Award plaintiffs all costs and expenses incurred in this matter, and grant any such other and further relief which this Court deems just and proper.

Respectfully submitted,

*Ronald P. Schiller* (signature)

Ronald P. Schiller (41357)
Jacqueline R. Dungee (87904)
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103
215-496-1020
215-851-1020 (fax)

Dated: March 30, 2010

Attorneys for Plaintiffs, National Fire Insurance Co. and Continental Casualty Co.